IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SECURE AXCESS, LLC, | § § § | |
| Plaintiff, | § § | CASE NO. 2:13-cv-32-JRG |
| v. | § § | |
| NINTENDO OF AMERICA INC., et al. | § § | Member Case: |
| Defendants. | § § § § | Case No. 2:13-cv-289-JRG |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Joint Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants (Dkt. No. 61). On January 18, 2013, Secure Axcess, LLC ("Secure Axcess") filed suit against twelve defendants for infringement of United States Patent No. 6,522,309 by making, using, selling, offering for sale, and/or importing certain Nintendo DS systems. This case was consolidated with a member case, *Secure Axcess, LLC v. Accell Corporation, et al.*, Case No. 2:13-cv-289, for all pretrial issues (except venue) on August 2, 2013. (*See* Dkt. No. 72.) Only Nintendo of America Inc. ("Nintendo") has moved to transfer venue.

Nintendo moves to be severed out of the above action, to transfer the case against it to the Western District of Washington (WDWA), and to stay the case here against the remaining eleven defendants pending resolution in WDWA. The Court held a hearing on this motion on February 25, 2014 and heard oral argument from both sides.

## I. SEVERANCE

The Court will first evaluate whether severance of Nintendo is proper.

The defendants are self-divided into two groups: Nintendo and eleven Retailer Defendants.[1] The eleven Retailer Defendants sell Nintendo DS systems. There is no dispute that Nintendo alone designs, develops, and manufactures the accused Nintendo DS systems. Based on those facts, Nintendo contends that claims against the Retailer Defendants are peripheral to the claims against Nintendo such that adjudication of the claims against Nintendo will likely dispose of the other claims. Accordingly, Nintendo argues that the customer suit exception applies and severance is appropriate.

In response, Plaintiff does not contest that for the issues of infringement and validity, a resolution against Nintendo would resolve those issues for the Retailer Defendants. This is especially true since the Retailer Defendants represent that they will stipulate to be bound by Nintendo's judgment if the Court grants the present motion. No such stipulation has yet been filed with the Court. However, Plaintiff asserts that its damages claims against the Retailer Defendants are different from its damages claims against Nintendo. Plaintiff argues that due to higher retail prices and the practice of bundling the Nintendo DS systems with video games and other accessories, the Retailer Defendants enjoy the benefits of convoyed sales. As such, Plaintiff argues, its damages claims against the Retailer Defendants are independently significant from its damages claim against Nintendo for the purposes of establishing a reasonable royalty.

---

[1] The retailers include Micro Electronics, Inc.; Hastings Entertainment, Inc.; Game Stop Corporation; Wal-Mart Stores, Inc.; Wal-Mart Stores Texas, LLC; Best Buy Stores, L.P.; Bestbuy.com, LLC; K Mart Corporation; Target Corporation; Toys "R" US-Delaware, Inc.; and Amazon.com, LLC (collectively, "Retailer Defendants").

### A. Applicable Law

Neither side asserts that there is misjoinder in this case. That said, the Court finds it instructive to briefly address the standard for when joinder is proper before considering an exception to the rule, commonly referred to as the customer suit exception. The Federal Circuit in *In re EMC I* clarified the test for joinder by holding that "[c]laims against independent defendants (i.e., situations in which the defendants are not acting in concert) cannot be joined under Rule 20's transaction-or-occurrence test unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts." 677 F.3d 1351, 1359 (Fed. Cir. 2012). In addition, "joinder is not appropriate where different products or processes are involved." *Id.* "Unless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical." *Id.* Under Rule 20, joinder is proper where: (1) the claims against the defendants arise out of the "same transaction, occurrence, or series of transactions or occurrences," and (2) there is a "question of law or fact common to all defendants." *Id.* at 1356. Effective September 16, 2011, the Leahy-Smith America Invents Act (AIA) now governs joinder in patent cases. Pursuant to the AIA, joinder of defendants in patent infringement actions is proper only if the allegations of infringement "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" and "relat[e] to the making, using, importing into the United States, offering for sale, or selling of *the same accused product or process*." 35 U.S.C. § 299 (emphasis added). Consequently, the key to proper joinder is a set of facts and issues in common among all the defendants in the same suit.

However, the commonality of issues and facts among the defendants in making joinder proper must be juxtaposed with exceptions to that rule. Rule 21 permits severance of any claim against a party if the interests of justice so requires. One such instance of severance is often employed in conjunction with the customer suit exception[2]—when so much is found to be in common among the defendants that one defendant becomes merely peripheral to the other. However, the customer suit exception has not always been used as a tool to sever the case against a manufacturer. Rather, it was initially developed as an exception to the first-to-file rule.

Traditionally, the customer suit exception, as the label denotes, arises in patent infringement actions where there are two separate but co-pending suits: an earlier-filed action against customers selling accused devices and a later declaratory judgment action brought by the manufacturer of the accused devices. In such situations, the district court may exercise its discretionary authority to stay the suit as to the customers pending resolution of the manufacture's declaratory judgment action in the manufacturer's chosen forum. *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (affirmed district court's decision to stay the customer suit pending resolution of a declaratory judgment action filed by the manufacturer in a different court); *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977) (held the manufacturer's declaratory judgment action in its home forum should take precedence over a customer action in a jurisdiction in which the manufacturer could not be sued); *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177 (2nd Cir. 1969) (affirmed district court's decision to restrain customer suit pending final disposition of a declaratory judgment action brought in

---

[2] Nintendo does not explicitly refer to the term "customer suit exception" in making its motion; rather, it moves for a severance, transfer, and stay pursuant to the three factor test discussed herein. The Court also does not conflate the two issues. Instead, it reviews the genesis of the "customer suit exception" in conjunction with certain instances in which such a set of facts are applied through the three factor test in the course of evaluating a manufacturer defendant's request to sever, transfer, and stay.

another district). This preference for the manufacturer suit to take precedent over the claims against the reseller or distributor of the accused products has its roots in the notion that the manufacturer is the "true defendant" and should bear the burdens of trial. *Codex*, 553 F.2d at 737-38.

However, application of the customer suit exception has more recently been applied in multi-defendant actions where both the manufacturer and retailer are defendants in the same case. In those cases, the customer suit exception can be used as a tool to facilitate transfer of the manufacturer defendant to a venue where suit against the retailer defendants could not have been originally brought. *Toshiba Corp. v. Hynix Semiconductor, Inc.*, 2005 WL 2415960 at *5 (N.D. Tex. Sept. 30, 2005) ("That the Court lacks power to transfer the claims against Millenium and Nova to the Northern District of California does not mean that transfer of the claims against the Hynix Defendants would be improper"); *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 632 (E.D. Va. 2003) (ordered severance to facilitate transfer to CDCA when it found retailer defendant MCSC is not subject to *in personam* jurisdiction in California), *Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 664 (E.D. Va. 1998) ("Given that the action as a whole cannot be transferred to the Northern District of Indiana, the question then presented is whether plaintiff's claim against Thulman may be severed from the claims against the CFM entities so that the latter claims may be transferred to Indiana"). The application to sever one lawsuit into two and transfer the severed case to the manufacturer's desired forum has been argued to achieve the same purpose for which the customer suit exception was originally developed, but when it is driven more by a desire to transfer than achieve efficiencies for the parties and the courts, it must be viewed with a discerning eye.

### B. Analysis

The purpose of permitting severance by applying the customer suit exception, where joinder is otherwise proper, is premised on traditional notions of fundamental fairness and judicial efficiency. *Koh*, 250 F. Supp. 2d at 632 ("Severance is also appropriate where a defendant is peripherally connected to the action with the consequence (whether intentional or not) that the burdens of trial are increased on other defendants…."); *L.G. Elec.*, 126 F. Supp. 2d at 421 ("Ultimately, the infringement claim against the manufacturer and central distributor is more likely to restore contested property rights nationwide than will enjoining one Virginia merchant from selling infringing products from existing inventory"). As stated in *Codex*:

> At the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit.... it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products.

*Codex*, 553 F.2d at 737-38 (citations omitted).

This Court does not disagree with the purpose of the customer suit exception in any respect. However, application of the exception should be tempered when severance of the manufacturer is made primarily to facilitate transfer to a forum more convenient to the manufacturer while the case against the remaining defendants, who are outside the jurisdictional reach of that forum, is stayed and left in the hands of the transferor court. This is especially true where the original court is one experienced in the trial of patent litigation and has developed case management techniques uniquely targeted to the efficient administration of patent litigation.[3]

---

[3] The Eastern District of Texas has one of the most extensive patent dockets in the nation. Its local patent rules, participation in the national Patent Pilot Program, and its recent adoption of alternative Track B case management for appropriate patent cases (*see* General Order 14-3) are evidence of experienced case management techniques.

The original rationale for severing to facilitate transfer was "to prevent a plaintiff from manipulating the system by joining a peripherally connected defendant to the main action for the sole purpose of accentuating the burdens of trial upon a defendant who would otherwise have been entitled to a § 1404(a) transfer." *Corry*, 16 F. Supp. 2d at 664 (citations and quotations omitted). However, rather than being the general rule, this far-reaching remedy should be reserved for that small subset of cases where an attempt to manipulate venue is clear. This is not such a case. This suit involves eleven Retailer Defendants with headquarters located throughout the country. Two of the Retailer Defendants are headquartered in Texas but neither is actually within the Eastern District of Texas. Defendants have not, nor can they reasonably allege, that the Plaintiff added the Retailer Defendants to this case purely to manipulate venue.

The severance-and-transfer method also does not simplify or streamline all issues in a patent infringement case. Though the "core" questions of infringement and validity may be disposed by litigating the claims against the manufacturer, an evaluation of damages is necessarily a defendant-specific inquiry (as contrasted from the *Katz, Codex* and *Playtex* cases, which were declaratory judgment actions brought by the manufacturer that does not reach the issue of damages and, therefore, did not have this concern).

Several courts have reasoned—correctly—that if a judgment is obtained against the manufacturer and the plaintiff collects on that judgment, the plaintiff may not in turn also collect against the retailer. *Shifferaw v. Emson USA, et al.*, 2010 WL 1064380 at *3 (E.D. Tex. Mar. 18, 2010); *Koh*, at 632-633; *LG Elec. Inc. v. Asustek Computers*, 126 F. Supp. 2d 414, 422 (E.D. Va. 2000). However, each of those instances presumes that the plaintiff will elect to collect on the judgment only against the manufacturer rather than abstain and pursue their case elsewhere against the retailer defendants. Real world experience shows that such an assumption is very

often accurate. Balanced against the option of reopening their case against the retailers in another district court with little or no knowledge of the transferred case, the plaintiffs are likely to be compelled, as a practical matter, to collect on the judgment they have already obtained at significant cost and over significant time. Such a resolution where the patentee is essentially coerced to recover from the manufacturer rather than other defendants should not be an intended or acceptable consequence of the customer suit exception.

On the other hand, if despite the above coercive pressures, the judgment goes uncollected against the manufacturer while the patentee returns to lift the stay against the retailers in the transferor court, the laudable goal of judicial efficiency and overall economy is significantly frustrated because now the same suit must be adjudicated in two different forums, if only on the damages issue. Accordingly, in an effort to reconcile this undesirable dichotomy of potential outcomes and while staying true to the underlying objective for which the customer suit exception was created, this Court adopts an alternative solution.

### C.  Application

In evaluating a manufacturer defendant's request to sever, transfer, and stay, courts have typically considered three factors: (1) whether the claims against the retailers are peripheral to the claims against the manufacturer; (2) whether adjudication of the severed claims would potentially dispose of the remaining claims; and (3) whether the § 1404(a) factors warrant transfer of the severed claims. *Shifferaw*, 2010 WL 1064380 at *4 (citing *Toshiba*, 2005 WL 2415960 at *4-7). This Court will first review the facts before it under the first two factors to make an initial determination of whether the customer suit exception should apply to sever the case against the manufacturers in this case. If severance is found appropriate, the Court will consider the § 1404(a) factors as to Nintendo only. If severance if found inappropriate, the Court

will evaluate transfer as to the case in its entirety as if all the defendants all moved to transfer venue. Otherwise, the Court will not reach the third factor.[4]

> 1. *Whether the claims against the retailers are peripheral to the claims against the manufacturer*

It is undisputed in this case that Nintendo is the sole manufacturer in the United States of the only accused product, the Nintendo DS systems, and sells it at wholesale to the Retailer Defendants. The Retailer Defendants do not assert that they have any role in the design or manufacture of the Nintendo DS systems. Indeed, Nintendo represents that it is indemnifying and defending all the Retailer Defendants. The Retailer Defendants likely have very little to offer in the way of evidence regarding the underlying technology of the accused devices or the substantive aspects of the infringement case. Therefore, the Retailer Defendants are only peripherally involved in determining the issues of infringement and, to some extent, issues of invalidity.[5] *Shifferaw*, 2010 WL 1064380 at *3. The Court finds that the claims of infringement and validity against the Retailer Defendants are peripheral to Nintendo. However, the same logic cannot be extended to the calculation of damages.

In responding to Defendants' motion, Plaintiff argued that the Retailer Defendants are not peripheral to Nintendo because its damages claims are different. Plaintiff contends that it will

---

[4] This Court's approach in evaluating these factors is not unique. Courts have consistently treated the third prong as a separate transfer analysis as to the severed defendant after severance is found proper under factors (1) and (2). *See Shifferaw*, 2010 WL 1064380 at *4 ("Because the court has found that severance is proper as to Mishan, the court analyzes whether transfer of the claims against Mishan is appropriate"); *Koh*, 250 F. Supp. 2d at 633 ("Therefore, it is appropriate to consider transfer of the claims against the Microtek defendants and MEI, having in mind severance and stay of the claims against MCSC"); *Toshiba*, 2005 WL 2415960 at *6 and *Corry*, 18 F. Supp. 2d at 666 (found severance was warranted before moving on to the transfer factors).

[5] Each defendant is entitled to assert the affirmative defense of patent invalidity. However, as the Retailer Defendants are represented by common counsel and have indicated a willingness to be bound by the WDWA's ruling on Nintendo's invalidity defense, the Court will assume for the purposes of this analysis that the Retailer Defendants are only peripherally involved on the issue of invalidity.

obtain a higher recovery from the retailers than the manufacturer because of the higher retail prices and the retailers' practice of bundling the accused systems with video games and other accessories. Plaintiff should have the opportunity to pursue damages from either Nintendo or the Retailer Defendants or both, as it clearly intended by filing this single suit, rather than have those options directly or indirectly foreclosed through the relief Nintendo has requested.

A fundamental tenant of patent law is that a patentee may file suit against *anyone* who without authority makes, uses, offers to sell, or sells any patented invention within the United States during the term of the patent. 35 U.S.C. § 271. The law imposes no arbitrary limit on which private citizen, corporation, or other entity may be the subject of such a suit. This Court is not aware of any authority that forbids a patentee from suing a distributor or retailer of an accused product when the manufacturer resides in the United States. It is also clear that upon a judicial finding for the claimant, the court shall award damages adequate to compensate for the infringement, but in no event less than a reasonable royalty. 35 U.S.C. § 284. Damages is no less a core issue in a patent infringement case than the issues of infringement and validity. Therefore, the Court finds that as to the issue of damages, the claims against the Retailer Defendants are *not* peripheral to those of Nintendo.

Where there is not added bundling or other activity that materially alters the damages claims between a manufacturer and its co-defendant retailers; that is to say, where the damages sought by plaintiff are the same among all the defendants, then severance and transfer might not work the same tangible harm on the plaintiff as exists in this case. Cases under those circumstances might be appropriately dealt with by the severance and transfer methodology Nintendo urges here. However, the scope and degree of damages are not common in this case and this Court does not reach the issue of severance and transfer where damages are common.

      2. *Whether adjudication of the severed claims would potentially dispose of the remaining claims*

Where adjudication of the claims of infringement and validity against the manufacturer would potentially dispose of those claims against the retailer, time and resources would be wasted if litigation proceeds against all the defendants simultaneously. In this case, there is no dispute that the issues of infringement and validity are common to Nintendo <u>and</u> the Retailer Defendants. The Retailer Defendants could only be found liable if the patent infringement claims against Nintendo are resolved in Plaintiff's favor. However, if the patent is adjudicated as both valid and infringed, then Plaintiff should be allowed to pursue Nintendo and the Retailer Defendants simultaneously for an award of damages, even though it may only collect once. *LG Elec.*, 126 F. Supp. 2d at 422 (citing *Intel v. ULSI*, 995 F.2d 1566, 1568-69 (Fed. Cir. 1993) (holding that patentee can collect only one royalty from patent infringement)). Accordingly, this factor is only satisfied insofar as an adjudication of noninfringement or invalidity would dispose of the claims against the Retailer Defendants. It is not satisfied as to the issue of damages based upon a reasonable royalty.

After studying the traditional application of the customer suit exception and considering the parties' arguments, as well as the facts in this case, the Court agrees with Nintendo that it is the "true defendant" in this case for purposes of determining the issues of infringement and validity. However, rather than engaging in the process of severing, transferring, and then staying the case, the interests of preventing the waste of both time and resources can also be achieved by permitting Nintendo to proceed alone in this Court on infringement and validity while the Retailer Defendants are stayed, conditioned upon their consent to be bound by Nintendo's

11

judgment.[6] Proceeding in this manner is a fair and equitable solution to otherwise unnecessary piecemeal litigation of one case across multiple district courts. It also works to insure that efficiency and economy, for the parties and the judiciary, are achieved. It prevents the customer suit exception from becoming a means to secure a transfer of venue when such was never a part of its originating purpose and there is no claim of venue manipulation through the addition of the eleven Retailer Defendants.

Accordingly, having considered not only the briefing and argument but also having had an opportunity to judge the nuances of credibility and intent, as is unique to the position of a trial court such as this, the Court in exercising its recognized discretion finds that severance is not an appropriate remedy and the defendants should remain joined "in the interest of avoiding prejudice and delay, ensuring judicial economy, [and] safeguarding principles of fundamental fairness." *In re EMC I*, 677 F.3d at 1360 (citing *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)).[7]

---

[6] The Court has also given much thought to evaluating the bifurcated portion of the infringement/validity case involving Nintendo for transfer in a § 1404(a) analysis. After due consideration, however, the Court believes the fragmented resolution of portions of the same case by multiple courts and multiple judges is not in the best interests of justice.

[7] This holding is consistent with pending legislation before Congress introduced by Senator Patrick Leahy on November 18, 2013 and designated as the "Patent Transparency and Improvements Act of 2013" (S. 1720). Section 4 of S. 1720 creates a "Customer Stay" provision which states "the court shall grant a motion to stay at least the portion of the action against a covered customer that relates to infringement of a patent involving a covered product or process" when both a customer and manufacturer have been sued for patent infringement, and (i) they both consent in writing to the stay, (ii) the manufacturer is a party to the action involving the same patent relating to the same product, (iii) the customer agrees to be bound by any issues finally decided as to the manufacturer, and (iv) the motion is filed within 120 days after service of the complaint or the date of the first scheduling order, whichever is later. The Court believes the present case is precisely the type of situation contemplated by this proposed legislation.

## II.   TRANSFER

The third factor in evaluating severance and transfer is (3) whether the § 1404(a) factors warrant transfer of the severed claims. Having found severance of Nintendo to be improper, the Court notes that the Defendants did not request transfer of this action as a whole and does not need to reach this third factor. Indeed, the Defendants alleged no facts to show that they can each satisfy the initial question of whether the suit could have originally been brought in WDWA. *Volkswagen I*, 371 F.3d at 203. Based on the record before the Court, a transfer of the entire action would clearly be improper.[8]

## III.   CONCLUSION

For the foregoing reasons and in the interests of justice, the Court **ORDERS** as follows:

The Retailer Defendants shall within fourteen (14) days of this Order file a stipulation agreeing to be bound by the verdict and rulings in this suit against Nintendo on issues of infringement and validity. Conditioned upon receipt of such stipulation, the Court **ORDERS** bifurcation of the liability/validity issues from the issue of damages and **STAYS** the case against the Retailer Defendants as to damages until a disposition of the liability/validity issues has been reached or until subsequent order of this Court.

Defendants' Joint Motion to Sever and Transfer the Claims Against Nintendo and to Stay the Claims Against the Retailer Defendants (Dkt. No. 61) is **DENIED**.

---

[8]   During oral argument, Defendants' counsel indicated that the Defendants would waive any objection to venue and not oppose transferring the entire action to WDWA. However, the threshold inquiry to evaluating transfer under § 1404(a) depends upon whether the plaintiff has a right to sue in that district, not on the "wish or waiver" of a defendant. *Toshiba*, F. Supp. 2d at 4 (citing *Hoffman v. Blaski*, 363 U.S. 335, 343, 80 S.Ct. 1084 (1960)).

The stay previously entered by the Court (Dkt. No. 133) is hereby **LIFTED**. The parties are directed to meet and confer to file a motion to amend the docket control order, if needed, within fourteen (14) days.

**So ORDERED and SIGNED this 7th day of March, 2014.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE